# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

RYAN SCOTT FEELEY,

        Defendant-Appellee.

FOR PUBLICATION
September 15, 2015

No.  325802
Livingston Circuit Court
LC No.  14-022259-AR

Before:  SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

SAWYER, P.J. (*dissenting*).

I respectfully dissent.

I disagree with the majority's conclusion that Police Officer Douglas Roberts, a reserve officer with the City of Brighton, is not, in fact, a police officer for purposes of MCL 750.81d. The majority bases its conclusion on the fact that MCL 750.81d does not specifically list the job title "reserve police officer" in its definition of "person" under the statute.  I find this reasoning unpersuasive.

MCL 750.81d(1) establishes as a two-year felony the following:

> Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

Subsections (2), (3), and (4) establish greater penalties depending on the level of injury caused to the victim.  Furthermore, MCL 750.81d(7)(b) defines "person" as any of the following:

> (i) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

> (ii) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to

-1-

enforce state law and the rules and ordinances of that junior college, college, or university.

(iii) A conservation officer of the department of natural resources or the department of environmental quality.

(iv) A conservation officer of the United States department of the interior.

(v) A sheriff or deputy sheriff.

(vi) A constable.

(vii) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(viii) A firefighter.

(ix) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.

(x) An individual engaged in a search and rescue operation as that term is defined in section 50c.

The majority finds great significance in the fact that the term "reserve police officer" is not included in this list. I find no significance in that fact. The majority argues that, because this list explicitly includes a number of categories that might implicitly be considered a "police officer," that must reflect a legislative intent to exclude other categories that are not explicitly mentioned. I find this reasoning to be flawed.

The majority's reasoning is correct only if we start from the presumption that the Legislature has implicitly reached the same conclusion that the majority has reached: that a "reserve police officer" is not, in fact, a "police officer." That is, the Legislature would have seen a need to explicitly include the category of "reserve police officer" in its listing only if the Legislature did not consider a "reserve police officer" to already be included in the category of "police officer of this state or of a political subdivision" under MCL 750.81d(7)(b)(i), or if it wanted to explicitly *exclude* reserve officers from the definition. But there is no evidence in the text of the statute that would suggest that the Legislature views a "reserve police officer" to be anything other than a "police officer." Nor is there any indication that the Legislature intended to exclude reserve officers from the definition.

Next, it should not be overlooked that the statute, while providing an extensive definition of "person" does not, however, provide a definition of "police officer." Looking to Merriam-Webster's Collegiate Dictionary (11th ed), "police officer" is defined as "a member of a police force." And "police force" is defined as "a body of trained officers entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime." Thus, we need to look at whether Officer Roberts is a "trained officer" entrusted by

-2-

the City of Brighton with the "maintenance of public peace and order, enforcement of laws, and prevention and detection of crime."

Officer Roberts testified that he attended a 16-week police academy, that he was sworn as an officer for the City of Brighton, that that oath included the obligation to uphold the laws of the City of Brighton and the State of Michigan, and that he was issued a uniform and a weapon. He worked a full shift, in a patrol car, along with a full-time officer. With respect to the specific events of this case, Officer Roberts testified that he and the full-time officer that he was working with were responding to a call for service regarding a fight in progress at a bar and that the bouncers needed assistance. Defendant was identified as the person causing the problem and Officer Roberts approached him and asked to speak with him. Defendant responded by running away from Roberts, who identified himself as a police officer and ordered defendant to stop. Defendant only complied after Officer Roberts repeated the command. While defendant did stop, he looked at Officer Roberts, responded by saying, "fuck you," and then reached behind his back. Concerned that defendant was reaching for a weapon, Officer Roberts drew his own weapon and ordered defendant to the ground. Defendant complied and, with the assistance of two other officers who had arrived at the scene, defendant was taken into custody. I would suggest that these facts establish that Officer Roberts is a "trained officer" who has been entrusted by the City of Brighton and its police chief with the "maintenance of public peace and order, enforcement of laws, and prevention and detection of crime."

Moreover, I would note that this dictionary definition of "police officer" and its application to reserve officers finds some support in legislative language, albeit in a different statute. While I can find no use of the term "reserve police officer" in the statutes of this state, the concealed pistol license statute does use the terms "reserve peace officer" and "reserve officer," defining them in MCL 28.421(1)(h) to mean

> an individual authorized on a voluntary or irregular basis by a duly authorized police agency of this state or a political subdivision of this state to act as a law enforcement officer, who is responsible for the preservation of the peace, the prevention and detection of crime, and the enforcement of the general criminal laws of this state, and who is otherwise eligible to possess a firearm under this act.

In addition to the utilization of a definition similar to the dictionary definition of "police officer," there is another aspect that I find compelling: the reference to a reserve officer serving on a "voluntary or irregular basis." The distinction between a "police officer" and a "reserve police officer" is not on the nature of their service to the city, but on the nature of their schedule. Both are police officers in that their duty is to preserve the peace, prevent and detect crime, and enforce the criminal laws of this state. The distinction is that a reserve officer does so on an irregular basis. Or, as Officer Roberts testified in this case, he works two or three shifts a month filling in for officers that are on vacation or have called in sick. That is, unlike a regular, full-time officer, he does not have a regular schedule. But I see nothing in MCL 750.81d that draws a distinction based on whether an officer enjoys a regular schedule in the performance of his or her duties.

Finally, I would note that if we were to follow the majority's rationale that all categories of "persons" must be explicitly listed in the statute, that would necessarily exclude those whose

job titles are something different than just "police officer." For example, a number of jurisdictions utilize "public safety" departments rather than police departments. Yet, MCL 750.81d(7)(b) does not include "public safety officer" in its list. I doubt that the Legislature intended to exclude them from the coverage of the statute. Rather, I believe the Legislature presumed that they, like reserve police officers, fall within the general category of "police officer" as they too are charged with preserving the peace, prevention and detection of crime, and enforcement of the law.

For these reasons, I conclude that Officer Roberts is a police officer of a political subdivision of this state, namely the City of Brighton. Accordingly, defendant could be found guilty under MCL 750.81d if he resisted or obstructed Officer Roberts in the performance of his duties.

I would reverse the lower courts and direct the district court to bind defendant over for trial if it finds that there is otherwise sufficient evidence to do so.


/s/ David H. Sawyer